# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2561
_____

Insulate SB, Inc.

*Plaintiff - Appellant*

v.

Advanced Finishing Systems, Inc.; Airtech Spray Systems; Barnhardt Manufacturing Company; C.H. Reed, Inc.; C.J. Spray; Coast Industrial Systems, Inc.; Coatings Holdings, Ltd.; Demilec (USA), LLC; Dove Equipment Co., Inc.; Endisys Fluid Delivery Systems; Golden State Paint Corporation; Graco Inc.; Graco Minnesota Inc.; Jack DeMita, in his individual capacity; Intech Equipment & Supply, LLC; Marco Group International, Inc.; MCC Equipment & Service Center; Specialty Products, Inc.; Spray Foam Nation, (registered under Energy Independence Inc.); Spray Foam Systems, LLC; Spray-Quip, Inc.; Ultimate Linings, Ltd.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 12, 2015
Filed: August 13, 2015

_____

Before RILEY, Chief Judge, MURPHY and MELLOY, Circuit Judges.

_____

RILEY, Chief Judge.

Insulate SB, Inc., a purchaser of fast-set spray foam equipment (FSE), filed this antitrust class action alleging FSE manufacturer Graco Inc. and its subsidiary Graco Minnesota Inc. (Graco) and a number of FSE distributors (Distributors) (collectively, appellees) conspired to restrain trade in violation of federal antitrust law, see 15 U.S.C. § 1, et seq., and numerous state antitrust and consumer protection laws. Insulate claims these conspiracies kept Graco's competitors out of the market, allowing Graco and the Distributors to charge artificially high prices. The district court[1] dismissed the action on the pleadings, and with appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND[2]

Graco manufactures FSE and sells it to distributors, who then resell on the open market to consumers like Insulate. Because there is no direct market for FSE, distributors are key to its sale. Insulate purchased FSE from defendant distributor Intech Equipment & Supply, L.L.C. and claims Graco's anticompetitive practices forced it to pay an artificially high price. In 2005, Graco purchased a competing FSE manufacturer, Gusmer Corp., thus achieving a 65% share of the North American FSE market, and in 2008, Graco purchased competitor GlasCraft, Inc., raising its market share "to above 90%."

Insulate alleges at some point "Graco agreed with its Distributors individually and collectively to enter into exclusive dealing arrangements for the purpose of

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]Because this case was disposed on a motion to dismiss, we state the well-pled facts as alleged in the complaint. See Zayed v. Assoc. Bank, N.A., 779 F.3d 727, 730 (8th Cir. 2015).

keeping new and potential entrants out of the FSE market." Insulate further alleges "key Distributors" assisted Graco in advancing its anticompetitive scheme. In October 2007, Graco sent a letter to its distributors citing the "best efforts" clause in its distributor agreements and expressing its preference that distributors refrain from adding non-Graco products. The letter stated:

> It is our opinion that taking on an additional competitive product line may significantly reduce the "best efforts" of a Graco distributor to sell our Graco and Gusmer product lines. Graco realizes that a business owner must make independent decisions regarding product lines competitive to Graco and Gusmer product offerings. . . .

> Should a distributor add a competitive product line, it will result in an immediate review of our business relationship and may impact access to specific products, changes in addendum status or possible elimination of our distributor agreement. . . .

> This position has been adopted by us unilaterally.

Insulate contends these distributor agreements kept potential competitor Gama Machinery USA, Inc. from entering the FSE market. In January 2009, Foampak, Inc.—a Graco distributor not named as a defendant—considered carrying Gama products but chose not to after Graco executives met with Foampak's president and threatened to end its distributorship. "Considering it a better decision for its business, Foampak acquiesced." In February 2012, Graco sent a letter to its distributors "reminding" them to not carry Gama products. Insulate alleges exclusive dealing agreements allowed Distributors to "charge Contractors anticompetitive prices for [FSE] and control geographic distribution areas and exclude new distributors from such areas."

In March 2008, Graco sued Gama alleging, among other things, theft of trade secrets, and Gama counterclaimed alleging, among other things, Graco had

unilaterally monopolized the FSE market in violation of Sherman Act Section 2, 15 U.S.C. § 2.

In 2013, the United States Federal Trade Commission (FTC) also drafted a complaint against Graco accusing Graco of unlawfully acquiring its competitors in violation of Clayton Act Section 7, id. § 18. Graco and the FTC entered a consent agreement which confirmed Graco would not engage in any practice "that has the purpose or effect of achieving Exclusivity with any Distributor." The consent agreement did "not constitute an admission by [Graco] that the law ha[d] been violated," and Graco emphasizes "the FTC did not allege" that Graco's activities were unlawful.

On June 14, 2013, after learning of the FTC complaint, Insulate filed the instant suit. Insulate claimed Graco and a collection of FSE distributors, through "agreements in restraint of trade," conspired to reduce competition in violation of the Sherman Act, the Clayton Act, and numerous states' antitrust and consumer protection laws. The district court granted the appellees' motions to dismiss, finding (1) Insulate's federal claims were barred by the statute of limitations; (2) Insulate had failed to state a claim on its federal causes of action; (3) Insulate, as a California resident, could not bring state law claims for states other than California; and (4) Insulate had not met the California antitrust statute of limitations and failed to state a claim under California's Unfair Competition Law.[3] Insulate appeals.

---

[3]The district court also denied Insulate's request for injunctive relief on its federal antitrust claims. We do not reach the district court's statute of limitations decisions.

-4-

## II.  DISCUSSION
### A.  Federal Antitrust Claims
#### 1.  Federal Antitrust Standing

"[T]he focus of the doctrine of 'antitrust standing' is somewhat different from that of standing as a constitutional doctrine." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 n.31 (1983); cf. NicSand, Inc. v. 3M Co., 507 F.3d 442, 449 (6th Cir. 2007) (en banc) (describing the doctrine of antitrust standing as more rigorous than Article III standing and explaining courts "must[] reject claims under [Federal Rule of Civil Procedure] 12(b)(6) when antitrust standing is missing").  To bring a federal antitrust claim, "a private plaintiff must demonstrate that he has suffered an 'antitrust injury' as a result of the alleged conduct of the defendants."  In re Canadian Import Antitrust Litig., 470 F.3d 785, 791 (8th Cir. 2006).  An "antitrust injury" is an "injury of the type the antitrust laws were intended to prevent . . . that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977).  "[T]he Supreme Court [has] held that a remote or 'indirect' purchaser was not a person injured" under federal antitrust law.  In re Midwest Milk Monopolization Litig., 730 F.2d 528, 529 (8th Cir. 1984) (citing Ill. Brick Co. v. Illinois, 431 U.S. 720, 735 (1977)).

The appellees claim Insulate, as an indirect purchaser of FSE, lacks standing to bring its antitrust claims.  Our court has suggested that indirect purchasers may bring an antitrust claim if they allege the direct purchasers are "party to the antitrust violation" and join the direct purchasers as defendants.  Campos v. Ticketmaster Corp., 140 F.3d 1166, 1170-71 & nn.3-4 (8th Cir. 1998).  We now hold as much. Because Insulate's complaint alleges conspiracies between Graco and the Distributors and names the Distributors as defendants, Insulate has adequately established it has antitrust standing.

## 2.    Failure to State a Claim

The presence of antitrust standing does not answer the distinct question whether Insulate has sufficiently stated a claim under Federal Rule of Civil Procedure 12(b)(6). Cf. Hutterville Hutterian Brethren, Inc. v. Sveen, 776 F.3d 547, 554 (8th Cir. 2015).

"We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6)." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768 (8th Cir. 2012).[4] "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal marks omitted).

Given "the unusually high cost of discovery in antitrust cases," id. at 558, "the limited 'success of judicial supervision in checking discovery abuse[,]' and 'the threat [that] discovery expense will push cost-conscious defendants to settle even anemic cases . . . ,' the federal courts have been reasonably aggressive in weeding out

_____

[4]On appeal, Insulate asks this court to take judicial notice of a number of documents concerning the FTC and Gama actions—including the FTC complaint and related documents, the district court's order denying summary judgment to Graco in the Gama suit, and a transcript of a deposition taken in the Gama suit—that Insulate believes are "supportive of the plausibility of [its] claims." Federal Rule of Evidence 201(b) allows this court to take judicial notice of public documents for the purpose of noting undisputed adjudicative facts, but judicial notice is inappropriate to the extent Insulate offers these documents for the "truth of the matters within them and inferences to be drawn from them–matters which [Graco] disputes." Kushner v. Beverly Enters., 317 F.3d 820, 832 (8th Cir. 2003). We thus grant Insulate's motion for judicial notice of these documents to the extent we note the existence of and basic facts surrounding these actions, but we decline to consider the documents as evidence Graco actually engaged in any anticompetitive conduct alleged therein.

Insulate's motion to supplement the record is denied.

meritless antitrust claims at the pleading stage," NicSand, 507 F.3d at 450 (second alteration in original) (quotation omitted) (quoting Twombly, 550 U.S. at 559). Cf. In re Text Messaging Antitrust Litig., 630 F.3d 622, 625-26 (7th Cir. 2010) ("When a district court by misapplying the Twombly standard allows a complex case of extremely dubious merit to proceed, it bids fair to immerse the parties in the discovery swamp . . . and by doing so create irrevocable as well as unjustifiable harm to the defendant.").

On appeal, Insulate challenges the dismissal of three federal antitrust claims: (1) conspiracy to restrain trade through the use of exclusionary agreements in violation of Sherman Act Section 1; (2) "attempt and conspiracy to" "acquire, maintain, and enhance Graco's monopoly power" in violation of Sherman Act Section 2; and (3) "use of exclusionary contracts to substantially lessen competition" in violation of Clayton Act Section 3.[5] As relevant to this case, the critical element of each claim is concerted action—i.e., the existence of a contract or conspiracy. See 15 U.S.C. §§ 1, 2, 14. "[T]o satisfy the concerted action requirement, the plaintiff must demonstrate that the defendants shared a 'unity of purpose or a common design and understanding, or a meeting of the minds.'" Impro Prods., Inc. v. Herrick, 715 F.2d 1267, 1273 (8th Cir. 1983) (quoting Am. Tobacco Co. v. United States, 328 U.S. 781, 810 (1946)). Pleading only "parallel conduct" or other conduct "merely *consistent with* [an] agreement" is not sufficient to show a conspiracy. Twombly, 550 U.S. at 557 (emphasis added).

Insulate can satisfy the concerted action requirement by showing "two or more persons entered into either an express or implied agreement." Impro, 715 F.2d at 1273 (discussing Sherman Act claims); see also In re Wholesale Grocery Prods. Antitrust Litig., 752 F.3d 728, 734 (8th Cir. 2014); Roland Mach. Co. v. Dresser

---

[5]Insulate also brought a price-fixing claim against all defendants and monopolization and unlawful acquisition claims solely against Graco but has expressly abandoned these claims on appeal.

Indus., Inc., 749 F.2d 380, 392 (7th Cir. 1984) ("In order to prevail on its [Clayton Act] section 3 claim, [the plaintiff] will have to show . . . that there was an agreement, though not necessarily an explicit agreement."). Insulate claims to have pled the existence of both express anticompetitive contracts and implied exclusivity agreements. After a thorough review of the complaint, we conclude Insulate has not pled "enough factual matter (taken as true) to suggest that an agreement was made," Twombly, 550 U.S. at 556.

### a.    Written Exclusivity Agreements

Insulate, quoting Insignia Systems, Inc. v. News America Marketing In-Store, Inc., 661 F. Supp. 2d 1039, 1062 (D. Minn. 2009), argues the "Appellees entered into written exclusive dealing contracts" that are "'sufficient to establish a contract or conspiracy for the purposes of . . . exclusive dealing claims.'" (Alteration in original). The complaint does not support this argument. Insulate appears to rely on Graco's 2007 letter as evidence of these "written exclusive dealing contracts." Because the complaint does not allege the Distributors signed any agreement consenting to the letter's terms or otherwise expressly agreed to its terms, there was no "'meeting of the minds,'" Impro, 715 F.2d at 1273 (quoting Am. Tobacco, 328 U.S. at 810), so the letter alone cannot constitute a written exclusive-dealing contract.

Insulate additionally suggests Graco and the Distributors' preexisting distributorship contracts are express contracts not to compete because, in its 2007 letter, Graco referenced the contracts' "best efforts clause." Graco's unilateral announcement of its decision not to supply distributors who also sell competing products did not transform a prior innocuous distributor agreement into a contract for exclusive dealing. See, e.g., United States v. Colgate & Co., 250 U.S. 300, 307 (1919) (determining a manufacturer's later request that its products not be sold below certain prices did not transform preexisting sales agreements between the manufacturer and its distributors into agreements not to compete); Concord Boat

Corp. v. Brunswick Corp., 207 F.3d 1039, 1058 (8th Cir. 2000) (explaining, although defendant's discount program may have created "de facto exclusive dealing arrangements," the discount agreements themselves "were not exclusive contracts").

Even though the complaint contains several conclusory references to a contract, the alleged facts do not suggest Graco entered into explicit exclusivity agreements with any of the Distributors. See Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." (internal marks omitted)).

### b.    Implied Agreements

Insulate, pointing to Graco's 2007 and 2012 letters and some distributors' resulting compliance, proposes the "Appellees' conduct provides . . . circumstantial evidence of anticompetitive agreements."[6]  However, in both the 2007 and 2012 letters, Graco simply stated its policy of not selling to distributors who also sold competitors' products.

The federal antitrust laws "do[] not restrict the long recognized right of [a] manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and, of course, he may announce in advance the circumstances under which he will refuse to sell." Colgate, 250 U.S. at 307.  Under the "Colgate doctrine," "[a] manufacturer . . . generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so

---

[6]Insulate's complaint states the appellees entered into both an overarching hub-and-spoke conspiracy and multiple small conspiracies between Graco and each of its distributors.  The parties dispute whether Insulate adequately alleged a hub-and-spoke conspiracy.  Because we conclude Insulate's complaint does not sufficiently allege any conspiracy—whether widespread or on an individual basis—we do not reach this issue.

independently." Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761-63 (1984) (citing Colgate, 250 U.S. at 307); accord Corner Pocket of Sioux Falls, Inc. v. Video Lottery Techs., Inc., 123 F.3d 1107, 1111-12 (8th Cir. 1997). Indeed, a "manufacturer can announce its [policy] in advance and refuse to deal with those who fail to comply. And a distributor is free to acquiesce in the manufacturer's demand in order to avoid termination." Monsanto, 465 U.S. at 761.

To allege the existence of a conspiracy adequately, Insulate must present something beyond the mere fact that Graco stated its policy and the Distributors complied. In United States v. Parke, Davis & Co., 362 U.S. 29 (1960), the Supreme Court explained that plaintiffs can prove concerted action by showing a manufacturer took some action "beyond mere announcement of his policy and the simple refusal to deal[ and] employ[ed] other means which effect adherence to his" policies. Id. at 44; see, e.g., Monsanto, 465 U.S. at 765 (holding defendant's attempts to force its distributors to comply with its resale price policy went beyond the Colgate doctrine's limits); Parke, Davis, 362 U.S. at 33-36, 45 (deciding a company that policed the implementation of its resale price policy and individually met with each of its wholesalers and retailers to ensure compliance exceeded Colgate). Yet Colgate protects a manufacturer who communicates a policy and then terminates distribution agreements with those who violate that policy. See Colgate, 250 U.S. at 307; Roland, 749 F.2d at 393 ("The mere announcement of [an exclusive-dealing] policy, and the carrying out of it by canceling [a] noncomplying dealer, would not establish an agreement."); see also, e.g., Lovett v. Gen. Motors Corp., 998 F.2d 575, 577, 579 (8th Cir. 1993) (explaining the plaintiff's evidence that a manufacturer decreased its supply to a noncompliant distributor and told the distributor to "reconsider" its noncompliant activities was not sufficient to support the jury's finding of a conspiracy and reversing the district court's denial of judgment as a matter of law to the manufacturer).

-10-

Attempting to distinguish Colgate, Insulate maintains the appellees took actions to enforce their agreements that went "'beyond [the] mere announcement of [a] policy and the simple refusal to deal,'" quoting Parke, Davis, 362 U.S. at 44. But the complaint does not describe any conduct suggesting an agreement between Graco and the Distributors. While the complaint makes some vague references to concerted action among "key Distributors," Insulate does not provide any factual allegations beyond the bare conclusion that there was a conspiracy. The complaint does not allege when the agreements occurred or even identify which of the distributors named as defendants—if any—are among the "key Distributors" who were party to the agreements. Without some supporting factual allegations, these conclusions are insufficient. See Twombly, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); In re Elevator Antitrust Litig., 502 F.3d 47, 50-51 (2d Cir. 2007) (per curiam) (dismissing plaintiff's complaint because the complaint generally recounted antitrust violations "without any specification of any particular activities by any particular defendant; it is nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever" (quotation and marks omitted)); accord Twombly, 550 U.S. at 565 n.10 (doubting whether a complaint "mention[ing] no specific time, place, or person involved in the alleged conspiracies" would adequately state a claim).

The only allegations in the complaint that come close to suggesting a conspiracy are those concerning Foampak. The complaint avers Graco, after learning Foampak was considering taking on a competitive product line, flew two "top executives" to Foampak's headquarters to meet with Foampak executives. At this meeting, Graco threatened to end Foampak's distributorship, so Foampak chose not to carry a competitive product. Insulate compares Graco's actions here to similar behavior in Monsanto, which the Supreme Court found exceeded the Colgate doctrine's limits. See Monsanto, 465 U.S. at 765 (explaining Monsanto's multiple attempts to force distributor compliance with its resale price policy by threatening

-11-

termination and "complain[ing] to [a] distributor's parent company" were sufficient to support the jury's finding of an agreement).

Assuming Insulate's complaint sufficiently alleges an agreement between Foampak and Graco, Insulate cannot challenge this conspiracy because it has not named Foampak as a defendant. See Campos, 140 F.3d at 1170-71 & nn.3-4. The complaint does allege Foampak had "communications with fellow Distributors," broadly implying these other distributors may have been part of the alleged Graco-Foampak conspiracy. But again Insulate does not identify any other distributor by name, suggest when these communications occurred, or provide any other specific factual allegation that would create an inference that an agreement was made.[7]

Ultimately, Insulate's complaint fails sufficiently to allege concerted action. The complaint repeatedly asserts Graco and an unnamed set of distributors generally conspired to restrain trade, but these assertions are not enough. "[A] naked assertion of conspiracy . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." Twombly, 550 U.S. at 557 (internal marks omitted). Insulate has not provided the "factual enhancement" necessary to move its complaint forward.

---

[7]Insulate additionally references Graco's dealings with the FTC, suggesting we should infer Graco's wrongdoing from the FTC's investigation and consent agreement. The FTC's complaint, however, alleged Graco unlawfully acquired competitors under Clayton Act Section 7, conduct not relevant to the conspiracy claims alleged here. Further, the FTC consent agreement explicitly stated Graco had made no admission of guilt. We thus decline to presume Graco violated federal antitrust laws based on the mere existence of this settlement of a different antitrust dispute.

**B.    State Law Claim**

**1.    Minnesota Antitrust Claim**

Insulate appeals the dismissal of its claim under the Minnesota Antitrust Law of 1971, Minn. Stat. § 325D.49 et seq., contending the district court erroneously concluded Insulate, as a non-citizen of Minnesota, could not bring this claim. Assuming without deciding Insulate can bring a claim under Minnesota antitrust law, we affirm the dismissal because Insulate failed to state its claim adequately. See Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005) ("We may affirm the district court's dismissal on any basis supported by the record."). Because "Minnesota antitrust law is generally interpreted consistently with federal antitrust law," Lorix v. Crompton Corp., 736 N.W.2d 619, 626 (Minn. 2007) (en banc), and Insulate agrees our analysis of its federal claims also applies to its Minnesota claim, Insulate's Minnesota antitrust claim also must be dismissed for failure to state a claim.[8]

**2.    California Claims**

Insulate appeals the dismissal of its California antitrust and unfair competition claims.

---

[8]Minnesota law differs from federal law in one material respect:  Minnesota allows indirect purchasers to sue manufacturers for antitrust violations. See Lorix, 736 N.W.2d at 626-27.  Minnesota still imposes some "prudential limits" on antitrust plaintiffs, including a showing of proximate cause. Id. at 631.  Assuming Insulate has alleged an anticompetitive agreement between Graco and Foampak, Insulate still lacks standing under Minnesota law to challenge this agreement because it only purchased FSE from Intech and has not pled any injury traceable to a Graco-Foampak conspiracy.  To the extent Insulate alleges in its brief a Minnesota monopolization claim against Graco individually, there is nothing in the pleadings or record mentioning this claim, and we will not consider that claim for the first time on appeal. See Horras v. Am. Capital Strategies, Ltd., 729 F.3d 798, 803 n.3 (8th Cir. 2013).

As with its Minnesota claim, Insulate has failed to state a claim under California's Cartwright Antitrust Act, Cal. Bus. & Prof. Code § 16700 et seq. "A long line of California cases has concluded that the Cartwright Act is patterned after the Sherman Act and both statutes have their roots in the common law. Consequently, federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act." Marin Cnty. Bd. of Realtors, Inc. v. Palsson, 549 P.2d 833, 835 (Cal. 1976) (in bank); see also Corwin v. Los Angeles Newspaper Serv. Bureau, Inc., 484 P.2d 953, 959 (Cal. 1971) (in bank) ("[F]ederal decisions interpreting section 3 [of the Clayton Act] are applicable to section 16727 [of the Cartwright Act]."). Because Insulate has not sufficiently pled a claim under federal antitrust law, Insulate also has not stated a claim under the Cartwright Act. See, e.g., nSight, Inc. v. PeopleSoft, Inc., 296 Fed. App'x 555, 557 n.3 (9th Cir. 2008) (unpublished memorandum) ("nSight's monopolization and attempted monopolization claims under the Cartwright Act fail for the same reasons as its [Sherman Act] Section 2 claim.").

Insulate similarly has failed to state a claim under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq. The UCL "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts." Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 943 (Cal. 2003). The district court found Insulate failed to state a claim under the UCL's unlawful prong because Insulate did not allege a violation of the antitrust laws. Insulate now claims the appellees engaged in both unlawful and unfair business practices.

As discussed above, Insulate has not sufficiently pled the appellees violated any antitrust law and thus has no claim under the UCL's unlawful prong. See Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1168, 1171 (9th Cir. 2012) (explaining "[t]o be 'unlawful' under the UCL, the [defendant's] advertisements must violate another 'borrowed' law" and affirming the dismissal of the plaintiff's UCL claim

because he failed to plead adequately a violation of California's False Advertising Law (quoting Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co., 973 P.2d 527, 539-40 (Cal. 1999))).

Insulate also failed to plead a violation of the UCL's unfair prong. In the antitrust context, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech, 973 P.2d at 544. Here, Insulate has only pled actions consistent with Graco's "right to deal, or refuse to deal, with whomever it likes," Monsanto, 465 U.S. at 761, which is not unfair conduct. See Orchard Supply Hardware LLC v. Home Depot USA, Inc., 967 F. Supp. 2d 1347, 1364 (N.D. Cal. 2013) ("[A]cts permissible under antitrust laws 'cannot be deemed unfair under the unfair competition law,' at least not where a plaintiff alleges that the acts are unfair for the same reason it argues that they violate antitrust law." (quoting Chavez v. Whirlpool Corp., 113 Cal. Rptr. 2d 175, 184 (Cal. Ct. App. 2001))).

## III.  CONCLUSION

While "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, [it is] quite another to forget that proceeding to antitrust discovery can be expensive." Twombly, 550 U.S. at 558 (internal citation omitted). Insulate has not pled sufficient facts to allow its case to proceed to discovery. We affirm the dismissal of Insulate's claims.

_____